Electronically Filed - Boone - November 13, 2018 - 05:13 PM

**IN THE CIRCUIT COURT OF BOONE COUNTY, MISSOURI**

| | |
|---|---|
| MARK STEVENSON, | ) |
| | ) |
| And | ) |
| | ) |
| CAROL STEVENSON, | ) |
| | ) |
| And | ) |
| | ) |
| REAL ESTATE MANAGEMENT, INC., | ) |
| | ) |
| And | ) |
| | ) |
| EASTGATE APARTMENTS, LLC, | ) |
| | ) |
| And | ) |
| | ) |
| VILLA CAPRI APARTMENTS, LLC, | ) |
| | ) |
| v. | )    **Case No.:** |
| | )    **Division:** |
| AMERICAN FAMILY MUTUAL | ) |
| INSURANCE COMPANY, S.I, | ) |
| Serve: Missouri Director of Insurance | ) |
|      301 W. High Street, Rm. 630 | ) |
|      Jefferson City, MO 65101 | ) |
| | ) |
| Defendant. | ) |

**PETITION FOR DAMAGES**

COME NOW, Plaintiffs, by and through undersigned counsel, and for their causes of action against Defendant American Family Mutual Insurance Company, S.I. ("American Family") states as follows:

1.  Plaintiff Mark Stevenson is an individual residing in Boone County, Missouri.

2.  Plaintiff Carol Stevenson is an individual residing in Boone County, Missouri.

3.  Real Estate Management, Inc. ("REMI") is a Missouri Corporation with its principal place of business in Missouri.



**EXHIBIT**

**A**

4. Plaintiff Eastgate Apartments, LLC is a Missouri limited liability company.

5. Plaintiff Villa Capri Apartments, LLC is a Missouri limited liability company.

6. Defendant American Family Mutual Insurance Company, S.I. is an insurance company authorized to do business in the state of Missouri and doing business in the state of Missouri. Defendant American Family is a Wisconsin corporation with its principal place of business in Wisconsin.

7. Defendant American Family was formerly known as and doing business as American Family Mutual Insurance Company until January 1, 2017.

8. The insurance policies at issue in this litigation were issued to Plaintiffs in Boone County, Missouri and the acts complained of occurred in Boone County, Missouri.

9. At all times relevant hereto, Defendant was acting by and through its employees, agents and servants.

10. At all times relevant hereto, Defendant's employees, agents and servants were acting within the course and scope of their agency.

**FACTS**

11. Plaintiffs were sued by Damion Riley in the case captioned *Damion Riley, et al. v. Real Estate Management, Inc., et al.*, Case Number 13BA-CV03520, in the Circuit Court of Boone County, Missouri (hereinafter the "Underlying Case"). A copy of the Petition from the Underlying Case is attached as **Exhibit 1**.

12. At the time of the events complained of in Exhibit 1, Plaintiffs were insured by Defendant American Family under several policies of liability insurance including Policy Number 24XL1367-01 and Policy Number 24XH437402.

13. Upon information and belief, Plaintiffs were insured by Defendant American Family under additional policies of liability insurance including a renewal of Policy Number 24XL1367-01 and a prior version of Policy Number 24XH437402 and a policy of homeowners insurance.

14. Plaintiffs have requested all policies of insurance issued to them by Defendant American Family in place at the times of the events identified in **Exhibit 1** but Defendant American Family has refused and failed to provide such policies to Plaintiffs.

15. Under the terms of the policies of insurance issued by Defendant American Family to Plaintiffs, including Policy Number's 24XL1367-01 as well as any subsequent renewals, and Policy Number 24XH437402 and any prior versions, Defendant American Family had the exclusive right and duty to investigate, defend and settle any claims made against Plaintiffs arising out of the facts and circumstances alleged in **Exhibit 1**.

16. Under the terms of the policies of insurance issued by Defendant American Family to Plaintiffs, including Policy Number's 24XL1367-01 as well as any subsequent renewals, and Policy Number 24XH437402 and any prior versions, Defendant American Family was obligated to provide a defense and indemnity to Plaintiffs for the claims made against Plaintiffs in **Exhibit 1**.

17. Plaintiffs tendered **Exhibit 1** to Defendant American Family and requested that Defendant American Family provide Plaintiffs with a defense and indemnity for the claims made against them in **Exhibit 1**.

18. Upon information and belief, Defendant American Family, upon receiving Plaintiffs' tender and demand for defense opened up a claim file for the claims made against Plaintiff and assigned the claims to claim number 00-225-049551.

19. Defendant American Family, upon receiving Plaintiffs' tender and demand for defense and indemnity, conducted no investigation into the allegations contained within **Exhibit 1** and denied any coverage to Plaintiffs including a defense.

20. Upon receiving Defendant American Family's denial of coverage and defense dated November 13, 2013, Plaintiffs again requested that Defendant American Family provide them with a defense and indemnity for the allegations contained within **Exhibit 1**.

21. In a letter dated November 25, 2013, Defendant American Family again conducted no investigation into the allegations contained within **Exhibit 1** and denied any coverage to Plaintiffs including a defense.

22. At no point did Defendant American Family retain a lawyer to provide a defense to Plaintiffs for the claims made against them in Exhibit 1

23. Plaintiffs have requested the claims file associated with claim number 00-225-049551 but American Family has refused to provide the claims file.

24. Following Defendant American Family's denial of a defense and indemnity to Plaintiffs, Plaintiffs were forced to pay and retain counsel to defend the claims made against them in **Exhibit 1**.

25. Following Defendant American Family's denial of a defense and indemnity to Plaintiffs, Plaintiffs were forced to pay and expend money to settle the claims made against them in **Exhibit 1**.

### COUNT I-BREACH OF CONTRACT

26. Plaintiffs incorporate the foregoing paragraphs as though fully set forth herein.

27. At the time of the events complained of in Exhibit 1, Plaintiffs were insured by Defendant American Family under several policies of liability insurance including Policy Number 24XL1367-01 and Policy Number 24XH437402.

28. Upon information and belief, Plaintiffs were insured by Defendant American Family under additional policies of liability insurance including a renewal of Policy Number 24XL1367-01 and a prior version of Policy Number 24XH437402 and a policy of homeowners insurance.

29. Prior to the events complained of in Exhibit 1, Plaintiffs paid premiums to Defendant American Family in exchange for Defendant American Family assuming the obligation to provide a defense and indemnity to Plaintiffs in accordance with the terms of Policy Number's 24XL1367-01 as well as any subsequent renewals, and Policy Number 24XH437402 and any prior versions, and a policy of homeowners insurance.

30. Under the terms of the policies of insurance issued by Defendant American Family to Plaintiffs, including Policy Number's 24XL1367-01 as well as any subsequent renewals, and Policy Number 24XH437402 and any prior versions and a policy of homeowners insurance Defendant American Family had the exclusive right and duty to investigate, defend and settle any claims made against Plaintiffs arising out of the facts and circumstances alleged in **Exhibit 1**.

31. Under the terms of the policies of insurance issued by Defendant American Family to Plaintiffs, including Policy Number's 24XL1367-01 as well as any subsequent renewals, and Policy Number 24XH437402 and any prior versions and a policy of homeowners insurance, Defendant American Family was obligated to provide a defense and indemnity to Plaintiffs for the claims made against Plaintiffs in **Exhibit 1**.

32. Plaintiffs complied with all the terms and conditions of Policy Number's 24XL1367-01 as well as any subsequent renewals, and Policy Number 24XH437402 and any prior versions and the policy of homeowners insurance.

33. Defendant American Family failed to perform its obligations and breached Policy Number's 24XL1367-01 as well as any subsequent renewals, and Policy Number 24XH437402 and any prior versions, and a policy of homeowners insurance in the following ways:

   a. In refusing to defend Plaintiffs in spite of its contractual obligation to do so;

   b. In refusing to provide any defense to Plaintiffs despite their demands that Defendant do so;

   c. In refusing to provide any indemnity to Plaintiffs under any policy of insurance in spite of its contractual obligation to do so; and

   d. In other particulars at present unknown to Plaintiffs but which Plaintiffs assert will be discerned through further discovery.

34. As a direct and proximate result of Defendant American Family breaches as described above, Plaintiffs sustained the following damages:

   a. Plaintiffs were forced to retain their own counsel at their own costs to defend against the claims made in Exhibit 1;

   b. Expending money to settle the claims made in Exhibit 1; and

   c. Emotional distress and mental suffering flowing from Defendant American Family's failure to provide a defense and indemnity to Plaintiffs.

WHEREFORE Plaintiffs pray for judgment against Defendant American Family on Count I for such sums as are fair and reasonable in excess of Twenty Five Thousand Dollars

($25,000.00) together with any and all costs incurred, for fair and reasonable attorneys' fees, for prejudgment and post judgment interest, and for such other relief permitted by the law as the Court deems just and proper.

## COUNT II-BAD FAITH FAILURE TO DEFEND

35. Plaintiffs incorporate the foregoing paragraphs as though fully set forth herein.

36. Under Policy Number's 24XL1367-01 as well as any subsequent renewals, and Policy Number 24XH437402 and any prior versions and a policy of homeowners insurance, Defendant American Family had the exclusive right and duty to investigate, defend and settle any claims made against Plaintiffs arising out of the facts and circumstances alleged in **Exhibit 1**.

37. Plaintiffs tendered **Exhibit 1** to Defendant American Family and demand a defense and indemnity from American Family.

38. After being notified of the claims made in **Exhibit 1**, Defendant American Family denied any coverage was available to Plaintiffs and denied Plaintiffs any defense including a defense under a reservation of rights.

39. On November 20, 2013, Plaintiffs again requested a defense and indemnity from Defendant American Family.

40. Defendant American Family again denied any coverage was available to Plaintiffs and denied Plaintiffs any defense including a defense under a reservation of rights.

41. In refusing to provide Plaintiffs with a defense, American Family acted in bad faith in the following ways:

   a. In refusing to defend Plaintiffs in spite of its contractual obligation to do so;

b. In refusing to conduct any investigation into the allegations contained in Exhibit 1;

c. In denying coverage to Plaintiffs without performing any investigation;

d. In refusing to provide any defense to Plaintiffs despite their demands that Defendant do so;

e. In refusing to provide a defense to Plaintiffs without a good faith and reasonable basis to believe that the policy did not provide coverage for the allegations made against Plaintiffs;

f. Failing to investigate the claims against Plaintiffs in a reasonable fashion;

g. Disregarding its contractual obligation to defend Plaintiffs without a reasonable basis for doing so in the hope of escaping its responsibilities under its policy; and

h. In other particulars at present unknown to Plaintiffs but which Plaintiffs assert will be discerned through further discovery.

42. As a direct and proximate result of Defendant American Family's breach of its contractual duty to defend Plaintiffs in good faith as set forth above, Plaintiffs have sustained the following damages:

a. Plaintiffs were forced to retain their own counsel at their own costs to defend against the claims made in Exhibit 1;

b. Expending money to settle the claims made in Exhibit 1; and

c. Emotional distress and mental suffering flowing from Defendant American Family's failure to provide a defense to Plaintiffs.

43. Defendant American Family's conduct as set forth above showed complete indifference and conscious disregard for the rights of Plaintiffs entitling Plaintiffs to an award of

Electronically Filed - Boone - November 13, 2018 - 05:13 PM

punitive damages to punish Defendant American Family and deter it from the same or similar conduct in the future.

WHEREFORE Plaintiffs pray for judgment against Defendant American Family on Count II for such sums as are fair and reasonable in excess of Twenty Five Thousand Dollars ($25,000.00) together with any and all costs incurred, for fair and reasonable attorneys' fees, for prejudgment and post judgment interest, for punitive damages in a reasonable sum and for such other relief permitted by the law as the Court deems just and proper.

Respectfully submitted,

**PRESLEY & PRESLEY LLC**

/s/ Kirk R. Presley
Kirk R. Presley          MO# 31185
Matthew A. McCoy     MO#68240
4801 Main Street, Suite 375
Kansas City, Missouri 64112
Phone: (816) 931-4611
Fax:     (816) 931-4646
Email: kirk@presleyandpresley.com
          matthew@presleyandpresley.com
*ATTORNEYS FOR PLAINTIFFS*

Electronically Filed - Boone - November 13, 2018 - 05:13 PM

## IN THE CIRCUIT COURT OF BOONE COUNTY, MISSOURI

| | |
|---|---|
| DAMION B. RILEY, | ) |
| | ) |
| and | ) |
| | ) |
| OLIVIA RILEY, | ) |
|     By and through her next best friend, | ) |
|     Damion B. Riley, | ) |
|               Plaintiffs, | ) |
| | ) |
| vs. | ) |
| | ) |
| REAL ESTATE MANAGEMENT , INC., | ) |
|     A Missouri Corporation, | ) |
| and | ) |
| | ) |
| EASTGATE APARTMENTS, LLC, | ) |
|     A Missouri Limited Liability Company, | ) |
| and | ) |
| | ) |
| VILLA CAPRI APARTMENTS, LLC, | ) |
|     A Missouri Limited Liability Company, | ) |
| and | ) |
| | ) |
| CAROL STEVENSON | ) |
|     An Individual | ) |
|               Defendants. | ) |

FILED
BOONE COUNTY

SEP 2 5 2013

CHRISTY BLAKEMORE
CLERK CIRCUIT COURT, COLUMBIA, MO

Case No. 13BA-CV 03520

**JURY TRIAL DEMANDED**

### PLAINTIFFS' PETITION FOR DAMAGES

COMES NOW Plaintiffs Damion B. Riley (hereinafter "Plaintiff") and Olivia Riley (hereinafter "Plaintiff Olivia"), by and through counsel, Johnston & Smith, LLC, and for their cause of action against Defendants for housing discrimination on the basis of race and familial status, pursuant to the Missouri Human Rights Act (hereinafter "MHRA") and the Fair Housing Act (hereinafter "FHA"), as well as their cause of action against Defendant REMI for a violation of the Fair Credit & Reporting Act (hereinafter "FCRA"), hereby state and allege as follows:

1.    Plaintiff Damion B. Riley is a resident of Boone County, residing at 605 North Seventh Street, Columbia, MO 65201.

**EXHIBIT**

tables

1

2.      Defendant Real Estate Management, Inc. (hereinafter "REMI") is a Missouri corporation with offices at 11 S. 4th Street, Columbia, Missouri 65201. Service of process can be effected by serving Mark Milam Stevenson at 11 S. 4th Street, Columbia, Missouri 65201

3.      Defendant Eastgate Apartments, LLC (hereinafter "Eastgate") is a Missouri Limited Liability Company with offices at One South Fourth Street, Suite A, Columbia, Missouri 65201. Service of process can be effected by serving Mark Milam Stevenson at One South 4th Street, Suite A, Columbia, Missouri 65201.

4.      Defendant Villa Capri Apartments, LLC (hereinafter "Villa Capri") is a Missouri Limited Liability Company with offices at One South Fourth Street, Suite A, Columbia, Missouri 65201. Service of process can be effected by serving Mark Milam Stevenson at One South Fourth Street, Suite A, Columbia, Missouri 65201.

5.      Carol Stevenson (hereinafter "Stevenson") is an individual working at 11 S. 4th Street, Columbia, Missouri 65201. Services of process can be effected by serving Carol Stevenson at 11 S. 4th Street, Columbia, Missouri 65201.

6.      The unlawful practices complained of herein took place in Boone County, Missouri.

7.      This action is brought pursuant to the MHRA, RSMo. § 213.040.1(1), which states that it shall be an unlawful housing practice "to refuse to sell or rent after the making of a bona fide offer, to refuse to negotiate for the sale or rental of, to deny or otherwise make unavailable, a dwelling to any person because of race, color, religion, national origin, ancestry, sex, disability, or familial status." Mo. Rev. Stat. Ann. § 213.040.1(1) (West).

8.      The MHRA, RSMo. § 213.040.1(3), prohibits the following: "To make, print, or publish, or cause to made, printed, or published any notice, statement or advertisement, with

Electronically Filed - Boone - November 13, 2018 - 05:13 PM

respect to the sale or rental of a dwelling that indicates any preference, limitation, or

discrimination based on race, color, religion, national origin, ancestry, sex, disability, or familial

status, or an intention to make any such preference, limitation, or discrimination." Mo. Rev. Stat.

Ann. § 213.040.1(3) (West).

9. The MHRA, RSMo. § 213.040.1(4), further states that it is an unlawful housing

practice "to represent to any person because of race, color, religion, national origin, ancestry,

sex, disability, or familial status that any dwelling is not available for inspection, sale, or rental

when such dwelling is in fact so available." Mo. Rev. Stat. Ann. § 213.040.1(1) (West).

10. This action is also brought pursuant to the FHA, 42 U.S.C. § 3604(a), which

states that it shall be unlawful "to refuse to sell or rent after the making of a bona fide offer, or to

refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to

any person because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. §

3604(a) (West).

11. The FHA, 42 U.S.C. § 3604(c), prohibits the following: "To make, print, or

publish, or cause to be made, printed, or published any notice, statement, or advertisement, with

respect to the sale or rental of a dwelling that indicates any preference, limitation, or

discrimination based on race, color, religion, sex, handicap, familial status, or national origin, or

an intention to make any such preference, limitation, or discrimination." 42 U.S.C. § 3604(c)

(West).

12. The FHA, 42 U.S.C. § 3604(d), further states that it is unlawful "to represent to

any person because of race, color, religion, sex, handicap, familial status, or national origin that

any dwelling is not available for inspection, sale, or rental when such dwelling is in fact so

available." 42 U.S.C. § 3604(d) (West).

13.     This action is also brought pursuant to the FCRA, 15 U.S.C. §§ 1681b(a)(3)(F)(i)-(ii) and 1681b(f)(1)-(2), which require a "person"[1] to have "a legitimate business need for [accessing a consumer's credit report]: (i) in connection with a business transaction that is initiated by the consumer; or (ii) to review an account to determine whether the consumer continues to meet the terms of the account." 15 U.S.C. §§ 1681b(a)(3)(F)(i)-(ii), 1681b(f)(1)-(2) (West).

14.     At all times relevant to this lawsuit, Defendant REMI was a rental property management company that leased and managed multiple properties, including apartment buildings.

15.     At all times relevant to this lawsuit, Defendant Eastgate was the owner of Eastgate Apartments, a multi-unit apartment building at 1802 E. Broadway, Columbia, Missouri 65201.

16.     At all times relevant to this lawsuit, Defendant Villa Capri was the owner of Villa Capri Apartments, a multi-unit apartment building at 1718 E. Broadway, Columbia, Missouri 65201.

17.     At all times relevant to this lawsuit, Defendant REMI leased and managed the multi-unit apartment building at 1802 E. Broadway, Columbia, Missouri 65201, known as Eastgate Apartments and owned by Defendant Eastgate.

---

[1] The FCRA defines "person" as "any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity." 15 U.S.C.A. § 1681a(b) (West).

18. At all times relevant to this lawsuit, Defendant REMI leased and managed the multi-unit apartment building at 1718 E. Broadway, Columbia, Missouri 65201, known as Villa Capri Apartments and owned by Defendant Villa Capri.

19. At all times relevant to this lawsuit, Carol Stevenson was the property owner and manager for REMI, and her job duties included showing available apartments to potential tenants, accepting applications, and renting apartments for properties—including the multi-unit apartment building at 1802 E. Broadway, Columbia, MO, known as Eastgate Apartments and owned by Eastgate Apartments, LLC, and the multi-unit apartment building at 1718 E. Broadway, Columbia, Missouri 65201, known as Villa Capri Apartments and owned by Villa Capri Apartments, LLC.

20. On or about July 30, 2012 Defendants refused to rent an Eastgate Apartment unit and a Villa Capri Apartment unit to Plaintiffs.

21. Plaintiffs' familial status was a contributing factor to the refusal to rent.

22. Plaintiffs' race was a contributing factor to the refusal to rent.

23. In conformity with 42 U.S.C. § 3610(a)(1)(A)(i), Plaintiffs filed a "Housing Discrimination Complaint" with the Office of Fair Housing and Equal Opportunity, U.S. Department of Housing and Urban Development (hereinafter "HUD"), on or about January 22, 2013—a date within one year of the unlawful discriminatory housing practices complained of herein. (A copy of said complaint is attached as Exhibit 1 and incorporated by reference as if set forth fully herein).

24. In the "Housing Discrimination Complaint" filed with HUD on or about January 22, 2013, Plaintiffs alleged that Defendants had refused to rent to them because of their race and familial status. *See* Ex. 1.

25.     On or about January 23, 2013, at the prompting of the proper investigative

authorities, Plaintiffs filed an "Amended Housing Discrimination Complaint" with HUD,

wherein they asserted the additional allegation that Defendants made discriminatory statements

due to Plaintiffs' familial status. (A copy of said amended complaint is attached as Exhibit 2 and

incorporated by reference as if set forth fully herein).

26.     On or about February 5, 2013, under the authority of 42 U.S.C. § 3610(f), HUD

referred Plaintiffs' complaints to the Missouri Commission on Human Rights (hereinafter

"MCHR") for investigation after determining that the MCHR had the authority to address

Plaintiffs' housing discrimination complaints and that the MHRA is substantially equivalent to

the FHA. (A copy of the Lt. from Betty Bottiger, Region VII Director, Office of Fair Housing

and Equal Opportunity, to Damion Riley (Feb. 5, 2013) is attached as Exhibit 3 and incorporated

by reference as if set forth fully herein).

27.     On or about June 4, 2013, the MCHR determined that probable cause existed to

believe that the above-named Defendants had unlawfully failed to rent to Plaintiffs on the basis

of their familial status. (A copy of the "Determination & Investigative Summary" of Alisa

Warren, Executive Director, MCHR (June 4, 2013) is attached as Exhibit 4 and incorporated by

reference as if set forth fully herein).

28.     While the "Determination & Investigative Summary" of June 4, 2013 failed to

make a determination as to Plaintiffs' charge that Defendants had made discriminatory

statements, correspondence from the MCHR of the same date stated as follows, "The MCHR has

completed its investigation of this complaint. Based on the evidence found during the

investigation, the Executive Director has determined...Respondents made a discriminatory

statement, refusing to rent to him because of his minor child." (A copy of the Lt. from Alisa

Electronically Filed - Boone - November 13, 2018 - 05:13 PM

Warrant, Executive Director, MCHR (June 4, 2013) is attached as Exhibit 5 and incorporated by reference as if set forth fully herein).

29. On or about August 5, 2013, the MCHR issued Plaintiff a Notice of Right to Sue letter. (A copy of the Lt. from Alisa Warren, Executive Director, MCHR, to Damion Riley (Aug. 5, 2013) is attached as Exhibit 6 and incorporated by reference as if set forth fully herein).

30. This action is commenced within 90 days of the issuance and receipt of the Notice of Right to Sue letter from the MHRA, and within two years of Plaintiff's reasonable discovery of the unlawful discriminatory practices complained of herein.

31. Similarly, this action is commenced within 2 years after the date of discovery by Plaintiffs of the acts of Defendants that make them liable for violations of the FCRA. *See* 15 U.S.C. § 1681p(1) (West).

32. In light of the foregoing, Plaintiff has satisfied all administrative and judicial prerequisites to the institution of his MHRA, FHA, and FCRA claims, and jurisdiction in this Court is proper. *See* 15 U.S.C. § 1681p(1), 42 U.S.C. §§ 3610(a)(1)(A)(i) and 3613(a)(1)(A)-(B) (West), and Mo. Rev. Stat. Ann. § 213.111.1 (West).

### Count I - Violation of Missouri Human Rights Act § 213.040 (as to all Defendants)

For their cause of action against Defendants for familial status and race discrimination in violation of the MHRA, Plaintiffs state and allege as follows:

33. Plaintiffs incorporate by reference Paragraphs 1-32 as if stated fully herein.

34. Plaintiffs are Native American, and therefore members of a protected class of persons under the MHRA, RSMo. § 213.040. Mo. Rev. Stat. Ann. § 213.040 (West).

35. At all times relevant to this lawsuit, Plaintiff was the parent of a minor child, Plaintiff Olivia, who would be living with him, thereby making them members of a protected

class of persons under the MHRA, RSMo. § 213.040. Mo. Rev. Stat. Ann. §§ 213.010(10)(a), 213.040 (West).

    36.    Plaintiff's uncle, Zackary Riley, is Caucasian.

    37.    Plaintiffs were subjected to familial status and race discrimination by Defendants, as is evidenced by the following occurrences:

    a. On or about July 9, 2012, Plaintiff contacted Defendant REMI, through its secretary, to schedule an appointment to look at an available unit at Eastgate Apartments;

    b. During the initial communication on July 9, 2012, Defendant REMI's agent was cordial and forthcoming with information on the available unit at Eastgate Apartments;

    c. During the initial communication on July 9, 2012, Defendant REMI's agent recommended that Plaintiff also look at an available unit on West Ash Street;

    d. Plaintiff was not interested in the West Ash Street unit, but agreed to look at both it and the available unit at Eastgate Apartments, on July 10, 2012;

    e. On or about July 10, 2012, Plaintiff and Plaintiff's uncle, Zackary Riley, met Defendant Stevenson at the West Ash Street Apartment;

    f. During the viewing, Plaintiff informed Defendant Stevenson that it would be himself and his six-year old daughter, Plaintiff Olivia, living at the apartment;

    g. After the viewing, Plaintiff informed Defendant Stevenson that he was not interested in the West Ash Street unit;

    h. After the viewing, Plaintiff asked Defendant Stevenson to show him the Eastgate Apartment unit that he had originally been scheduled to view;

i. It was only after Plaintiff informed Defendant Stevenson that it would be himself and his six-year old daughter, Plaintiff Olivia, living in the apartment, and not his Caucasian uncle, Zackary Riley, that Defendant Stevenson informed Plaintiff she had no units at Eastgate Apartments that she could show;

j. Upon further inquiry by Plaintiff, Defendant Stevenson informed Plaintiff that if he wanted to look at an Eastgate Apartment unit, he would have to schedule another appointment;

k. Later that week, on or about July 12, 2012, Plaintiff scheduled a viewing of a "remodeled" unit at the Eastgate Apartments for later that same day;

l. Plaintiff's uncle, Zackary Riley, attended the viewing on July 12, 2012;

m. When Defendant Stevenson arrived to show the "remodeled" Eastgate Apartment unit on July 12, 2012, it was apparent that she did not realize that she would be showing the apartment to Plaintiff;

n. Defendant Stevenson asked Plaintiff and Plaintiff's uncle, Zackary Riley, who would be living at the apartment;

o. Plaintiff again informed Defendant Stevenson that it would be himself and his six-year old daughter, Plaintiff Olivia, living at the apartment;

p. Then, despite the fact that Plaintiff had scheduled an appointment to view one of the "remodeled" Eastgate Apartment units, Defendant Stevenson showed Plaintiff a ground level unit that was not remodeled and was in poor repair;

q. Thereafter, Plaintiff asked that he be shown a "remodeled" unit;

r. Defendant Stevenson informed Plaintiff that this would not be possible;

s. At this point, Plaintiff's uncle, Zackary Riley, asked Defendant Stevenson what apartment complexes Defendant REMI owned in the area;

t. In response, Defendant Stevenson stated that Defendant REMI owned the Villa Capri Apartments just across the street, and that a unit was available there because a tenant was leaving before the completion of his or her lease term;

u. Plaintiff was genuinely interested in the Villa Capri Apartment unit because it sounded like a nicer unit and the up-front costs were less;

v. Defendant Stevenson again asked Plaintiff and Plaintiff's uncle, Zackary Riley, who would be living at the apartment;

w. Plaintiff again informed Defendant Stevenson that it would be himself and his six-year old daughter, Plaintiff Olivia, living at the apartment;

x. It was only after this statement by Plaintiff that Defendant Stevenson informed Plaintiff he would not be eligible for the available unit at Villa Capri Apartments because his income was too low;

y. Upon being informed by Defendant Stevenson that the Villa Capri Apartment unit was not an option, Plaintiff expressed interest in the ground-level unit at Eastgate Apartments that he had been shown minutes earlier, noting that he would feel safer with a ground level apartment because of his six-year old daughter;

z. Defendant Stevenson then began to waver on which, if any, Eastgate Apartment unit was available;

aa. Finally, Defendant Stevenson told Plaintiff that the only available Eastgate Apartment unit was an unremodeled upper level unit;

Electronically Filed - Boone - November 13, 2018 - 05:13 PM

bb. Over the next weekend, on or about July 14, 2012, Plaintiff filled out Defendant REMI's online apartment application for the Eastgate Apartments, thereby making a bona fide offer to rent (A copy of Plaintiff's Online Application is attached as Exhibit 7 and incorporated by reference as if set forth fully herein);

cc. As part of the online application process, Plaintiff had to pay $20.00 to cover the costs of reference and background checks to determine if he qualified for tenancy;

dd. On Monday, July 30, 2012, Defendant Stevenson called Plaintiff and stated, "We have a problem. We can't rent you the apartment because you have a child. We do not allow children there."

ee. The next day, July 31, 2012, Plaintiff informed his uncle, Zackary Riley, of what Defendant Stevenson had told him;

ff. Plaintiff's uncle, Zackary Riley, thereafter called Defendant Stevenson to confirm that this was the case;

gg. During the ensuing conversation, Defendant Stevenson stated that Eastgate Apartment units were not rented to individuals with children, that Plaintiff's online application was not processed further after they saw that he had a minor child, and that Defendant REMI had "child-friendly" apartments on the outskirts of town;

hh. When Plaintiff's uncle, Zackary Riley, informed Defendant Stevenson that Plaintiff needed a centrally located apartment, Defendant Stevenson replied that one option existed, but that it was outside of his price range, at $825.00 per

month—Eastgate Apartment units and Villa Capri Apartment units rented for only $525.00 and $650.00 a month respectively;

ii. After the conversation with Defendant Stevenson was concluded, Plaintiff called the other landlords that he had applied with, only to find that he had lost all of his other prospects because of the two weeks he spent waiting for Defendant REMI to "process" his application, which, as was described *supra* paragraph 37(gg), never even took place; and,

jj. As a result of the occurrences described *supra* paragraph 37 (a)-(ii), Plaintiff was forced to accept an apartment in a location that: (i) was not centrally located; (ii) was in an area of town with a significantly higher crime rate; (iii) lacked a swimming pool and other entertainment resources like those offered at the Eastgate complex; and (iv) was unreasonably distant from the minor child's school, parent's work and daycare.

38. Plaintiff's actions in: (i) expressing sincere interest in the Villa Capri Apartment unit and the Eastgate Apartment unit on July 12, 2012; and (ii) in filling out Defendant REMI's online application on July 14, 2012, constituted bona fide offers to rent from Defendants.

39. At all times relevant to this lawsuit, Plaintiff was qualified, financially and otherwise, to rent the available units at Villa Capri Apartments and Eastgate Apartments. *See, e.g.*, the box labeled "Other Information" on his REMI Online Application, wherein he states that during the summer months he averages roughly $1,700 per month, but that during the winter months he makes closer to $3,200 per month. In further support hereof, Plaintiff states the following:

a. Defendant REMI's published "Management Rental Policies" requires that a prospective tenant have a "combined income...equal [to] 2 times the amount of the monthly rent or 3 times the monthly rent and utilities combined." (A copy of Defendant REMI's published "Management Rental Policies" is attached as Exhibit 8 and incorporated by reference as if set forth fully herein);

b. As was alleged *supra* paragraph 37(hh), the Eastgate Apartment units and Villa Capri Apartment units rented for $525.00 and $650.00 a month respectively; and,

c. Plaintiff's "Direct Deposit Earnings Statements" and "Form W-2 Wage and Tax Statement" from the time period relevant to this lawsuit, attached as Exhibits 9 and 10 respectively and incorporated by reference as if set forth fully herein, conclusively demonstrate that Plaintiff met Defendant REMI's rental requirements as stated in the published "Management Rental Policies."

40. As a result of Defendants' actions described *supra* paragraph 37, Plaintiff: (i) suffered distress, humiliation, embarrassment, and anxiety; (ii) lost $20.00—as a result of the online application that was not processed; (iii) was forced to incur an increased cost of transportation for having to live in a less centrally located apartment; and (iv) expended resources dealing with Defendants and in having to begin the apartment search process over again after the obfuscation of Defendants.

41. Defendants' conduct and adverse actions in violation of the MHRA and FHA were outrageous because of Defendants' evil motive and/or reckless indifference to Plaintiffs' rights, thereby entitling Plaintiffs to an award of punitive damages—in addition to their actual damages.

## Count II - Violation of Fair Housing Act 42 U.S.C. § 3604
### (as to all Defendants)

42.     Plaintiffs incorporate by reference paragraphs 1-41 as if stated fully herein.

## Count III – Violation of the Fair Credit & Reporting Act 15 U.S.C. §§ 1681b(a)(3)(F)(i)-(ii), 1681b(f)(1)-(2)
### (as to Defendant REMI)

43.     Plaintiff incorporates by reference paragraphs 1-42 as if stated fully herein.

44.     On or about February 1, 2013, Defendant REMI made a request for Plaintiff's credit history through Equifax. (A copy of Plaintiff' Equifax Credit Report as of March 24, 2013, with selected portions redacted for confidentiality purposes, is attached as Exhibit 11 and incorporated by reference as if set forth fully herein).

45.     As reflected in the Equifax Credit Report, Defendnat REMI's request for Plaintiff's credit history of February 1, 2013 will remain on Plaintiff's credit history report for two years and is likely to impact his credit rating. Ex. 11.

46.     As of March 24, 2013, Defendant REMI's February 1, 2013 request for Plaintiff's credit history is the only credit inquiry concerning Plaintiff that is listed in the category of "Inquiries that may impact your credit rating." Ex. 11.

47.     As of February 1, 2013, no business relationship existed between Plaintiffs and Defendant REMI.

48.     February 1, 2013 was roughly six months after July 31, 2012, the latter date being the day Defendant Stevenson, acting in her capacity as Defendant REMI's agent, unambiguously stated that Defendant REMI was no longer considering Plaintiffs as tenants.

49.     At no point between July 31, 2012 and February 1, 2013 did Defendant REMI ever state that it was continuing to consider Plaintiffs as potential tenants, or that it would investigate future openings in apartment complexes on their behalf.

50.     At no point between July 31, 2012 and February 1, 2013 did Plaintiff ever express a desire or intention that Defendant REMI further consider him and his daughter, Plaintiff Olivia, as a potential tenants.

51.     Upon knowledge and belief, Defendant REMI had been informed by the MCHR only days before February 1, 2013 that Plaintiffs had filed a housing discrimination complaint against them, and the act of being so informed was the true impetus behind Defendant REMI's subsequent request for Plaintiff's credit history.

### Prayer for Relief

WHEREFORE, Plaintiffs respectfully pray for the following relief:

A.  That the court declare Defendants' actions violate the MHRA, FHA, and the FCRA; and,

B.  That Defendants, their agents, employees and successors be permanently enjoined from discriminating against any person on the basis of race and familial status, in violation of the MHRA and FHA; and,

C.  That Defendant REMI, its agents, employees and successors be permanently enjoined from obtaining consumers' credit history reports without a legitimate business need for the same; and,

D.  That Plaintiffs be awarded actual damages, expressly including compensation for emotional distress and humiliation, necessary to make Plaintiffs whole and compensate them for the violation of their civil and statutory rights; and,

E.  That Plaintiffs be awarded punitive damages in the amount of $1,000,000.00; and,

F.  That Plaintiffs be awarded their attorneys fees and costs incurred in

prosecuting this action; and,

G.  That Plaintiffs be awarded such other legal and equitable relief as the Court

deems just and proper.

Respectfully Submitted,

George S. Smith, No. 53019
Johnston & Smith
*Attorney for Plaintiff*
2800 Forum Blvd., Suite 3
Columbia, MO  65203
(573)441-0800 phone
(573)449-3004 fax